**MNM2 Mgt. Inc. v Kay**

2024 NY Slip Op 30795(U)

March 11, 2024

Supreme Court, New York County

Docket Number: Index No. 650780/2024

Judge: Mary V. Rosado

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. MARY V. ROSADO       PART      33M

*Justice*

-----------------------------------------------------------------X

MNM2 MANAGEMENT INC.,1982 N. CLYBOURN
PARTNERS LLC,442 AMSTERDAM REAL ESTATE
CORP., 300 EAST 76TH STREET PARTNERS LLC,109
MACDOUGAL STREET PARTNERS LLC,430
AMSTERDAM PARTNERS, LLC,2048 WEST ARMITAGE
PARTNERS LLC,1939 WEST CHICAGO AVE PARTNERS
LLC, MITCHELL BANCHIK. MICHAEL ASCH

| | |
|---|---|
| INDEX NO. | 650780/2024 |
| MOTION DATE | 02/13/2024 |
| MOTION SEQ. NO. | 001 |

Plaintiffs,

- v -

JENNIFER KAY, JOSHUA COHEN,

Defendants.

**DECISION + ORDER ON MOTION**

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52

were read on this motion to/for         STAY        .

Upon the foregoing documents, and after oral argument which occurred on February 22, 2024 with Peter A. Mahler, Esq. and Becky (Hyun Jeong) Baek, Esq. appearing for Petitioners MNM2 Management Inc., 1982 N. Clybourn Partners LLC, 442 Amsterdam Real Estate Corp., 300 East 76th Street Partners LLC, 109 MacDougal Street Partners LLC, 430 Amsterdam Partners, LLC, 2048 West Armitage Partners LLC, 1939 West Chicago Ave Partners LLC, Mitchell Banchik, and Michael Asch (collectively, "Petitioners") and Andreas Koutsoudakis, Esq. and Michael Leon, Esq. appearing for Respondents Jennifer Kay ("Kay") and Joshua Cohen ("Cohen") (collectively "Respondents"), Petitioners' petition seeks an order, pursuant to CPLR Article 75, granting Petitioners a permanent stay of the Judicial Arbitration and Mediation Service ("JAMS")

650780/2024 MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 1 of 10

Arbitration initiated by Respondents on January 15, 2023 bearing Case No. 5425001778 (the "Arbitration"), is granted.[1]

## I. Background and Procedural History

Respondents commenced the Arbitration by filing a Demand for Arbitration (NYSCEF Doc. 2) and Arbitration Complaint (NYSCEF Doc. 3) on December 15, 2023, naming as respondents the Petitioners in the present proceeding along with 13 other entities (NYSCEF Doc. 1 at ¶ 12). The Arbitration was commenced derivatively on behalf of the shareholders/members of the 14 restaurant/bar entities (the "Bars and Restaurants") and six (6) real estate entities (the "Real Estate Entities") named as respondents therein, and individually on behalf of Respondents Joshua Cohen and Jennifer Kay (NYSCEF Doc. 44 at ¶ 4).

Of the fourteen (14) Bars and Restaurants, eight (8) are New York Bars and Restaurants (the "New York Bars and Restaurants"), two (2) are South Carolina Bars and Restaurants (the "South Carolina Bars and Restaurants"), and four (4) are Chicago Bars and Restaurants (the "Chicago Bars and Restaurants") (NYSCEF Doc. 33 at ¶¶ 12-14).

Of the six (6) Real Estate Entities, four (4) are New York Real Estate (the "New York Real Estate Entities"), and two (2) are Illinois Real Estate (the "Chicago Real Estate Entities") (NYSCEF Doc. 33 at ¶¶ 16-17). The Arbitration Complaint asserts claims arising out of Respondents' alleged grievances over the subject companies' annual fair market value determinations in 2023 (NYSCEF Doc. 1 at ¶ 14).

The ten (10) Petitioners herein include three Illinois LLCs (1982 N. Clybourn Partners LLC, 2048 West Armitage Partners LLC, and 1939 West Chicago Ave Partners LLC); three New York LLCs (300 East 76th Street Partners LLC, 109 MacDougal Street Partners LLC and 430

---

[1] Petitioners' request for an interim stay of the Arbitration pending a final determination of this summary proceeding was granted during oral argument on February 22, 2024.

Amsterdam Partners, LLC); two New York Corporations (MNM2 Management Inc. and 442 Amsterdam Real Estate Corp.); and two individuals (Banchik and Asch) (collectively, the "Individual Petitioners") (NYSCEF Doc. 11 at ¶ 5).

Respondent Kay is a member of Petitioners 1982 N. Clybourn Partners LLC, 300 East 76th Street Partners LLC, 109 MacDougal Street Partners, LLC, 2048 West Armitage Partners LLC, and 1939 West Chicago Ave Partners LLC, as well as a shareholder of Petitioner 442 Amsterdam Real Estate Corp. (NYSCEF Doc. 19 at ¶¶ 2-3). Additionally, Kay is a former employee of Petitioner MNM2 Management Inc., where she oversaw the operations of each Bar and Restaurant for Banchik and Asch (NYSCEF Doc. 19 at ¶ 6). Although Kay was terminated as an employee of MNM2 Management Inc. on March 24, 2023, she remains an equity holder in the Bars and Restaurants as well as the Real Estate Entities (NYSCEF Doc. 19 at ¶¶ 8-9).

Respondent Cohen is a member of Petitioners 1982 N. Clybourn Partners LLC, 300 East 76th Street Partners LLC, 109 MacDougal Street Partners LLC, and 430 Amsterdam Partners, LLC, a shareholder of Petitioner 442 Amsterdam Real Estate Corp., and an equity holder in the Bars and Restaurants and the Real Estate Entities (NYSCEF Doc. 33 at ¶¶ 1-2). Cohen is also a former employee of Third Ave. Rest., Inc. D/B/A Jake's Dilemma ("Jake's Dilemma") one of the Bars and Restaurants located in New York (NYSCEF Doc. 33 at ¶ 6). Despite his release from Jake's Dilemma on July 24, 2023, Cohen remained an equity holder in the Bars and Restaurants as well as the Real Estate Entities (NYSCEF Doc. 33 at ¶¶ 6, 8).

On February 13, 2024, Petitioners commenced the instant action by filing a Verified Petition to stay permanently the Arbitration on the ground that Petitioners and Respondents have no agreement to arbitrate (NYCEF Doc. 1 at 4). In opposition, Respondents argue that Banchik and Asch are signatories to agreements containing binding arbitration clauses (NYSCEF Doc. 18

650780/2024   MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL          Page 3 of 10
Motion No. 001

[* 3]                                              3 of 10

at 9), and that the remaining "Non-Signatory Petitioners" are bound to the arbitration clause through exceptions to CPLR 7503; namely (a) agency principles; (b) veil-piercing/alter-ego; and (c) estoppel (NYSCEF Doc. 18 at 8).

## II. Discussion

Pursuant to CPLR 7503(b), a party "may apply to stay arbitration on the ground that a valid agreement was not made." It is well established that the issue of whether claims in a complaint are arbitrable "is for the court and not the arbitrator to determine" (*Primex Int'l Corp. v Wal-Mart Stores*, 89 NY2d 594, 598 [1997]). Further, "[i]t is a fundamental principle of New York law that in the absence of an agreement to do so, parties cannot be forced to arbitrate," and the enforcement of an alleged agreement to arbitrate "requires a clear and unequivocal manifestation of an intention to arbitrate because it involves the 'surrender [of] the right to resort to the courts'" (*Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [1st Dept 2002], citing (*Waldron v Goddess*, 61 NY2d 181, 183 [1984]; *see also Primavera Labs., Inc. v Avon Prods.*, 297 AD2d 505, [1st Dept 2002] holding that "[a] court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration").

### A. Petitioners Petition is Granted with Respect to the Individual Petitioners

As stated above, Petitioners argue that they are entitled to a permanent stay of the Arbitration on the ground that "[n]one of the Petitioners is a signatory to any agreement to arbitrate" (NYSCEF Doc. 52 at 8). With respect to the Individual Petitioners, Respondents assert that the Individual Petitioners are "shareholders/members and directors/managing members pursuant to the governing agreements" of the fourteen (14) Bars and Restaurants and six (6) Real Estate Entities, as well as "signatories to Agreements that contain broad arbitration provisions

650780/2024  MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 4 of 10

requiring binding arbitration for all 'claims' or 'controversy' 'arising out of, relating to or in connection with' the respective operating and/or shareholders agreement on behalf of their equity holders" (NYSCEF Doc. 18 at 7).

While Respondents assert that "[t]rue and correct copies of the Agreements [containing] Arbitration provisions [are] annexed to the Cohen Aff., as Exh. 'a'" (NYSCEF Doc. 18 at 5), Exhibit A to the Cohen Affidavit (NYSCEF Doc. 34) does not contain copies of any agreements with arbitration provisions, but rather an Agreement and General Release stating that Cohen's last day of employment at Third Ave. Rest. Inc. would be July 30, 2023 (NYSCEF Doc. 34). Arbitration is not mentioned in Cohen's July 30, 2023 General Release (*Id.*).

Rather, in support of their argument in opposition, Respondents attached the Amended and Restated Memorandum of Agreement for Mirabi Inc., one of the New York Bars and Restaurants (the "Mirabi Agreement") (NYSCEF Doc. 27), the Operating Agreement of 587 King Street Restaurant, LLC, one of the South Carolina Bars and Restaurants (NYSCEF Doc. 28); and an Amended and Restated Memorandum of Agreement for Kaleo Inc., one of the Chicago Bars and Restaurants (NYSCEF Doc. 29). Additionally, Respondents attach the Operating Agreement for 300 East 76th Street Partners, LLC, one of the New York Real Estate Entities (NYSCEF Doc. 30).

Of the agreements appended to Respondents' opposition papers, none contain an agreement between Petitioners and Respondents to arbitrate. Of the four Agreements appended by Respondents, only the Amended and Restated Memorandum of Agreement for Mirabi Inc. contains an arbitration clause (the "Mirabi Arbitration Clause") (NYSCEF Doc. 27 at ¶ 15).

*[The remainder of this page is intentionally left blank]*

The Mirabi Arbitration Clause states, *inter alia*, that:

> all disputes arising out of or in connection with this Agreement, the breach, termination, enforcement, interpretation or validity thereof or the legal relations between the parties, including disputes about arbitrability or the jurisdiction of the arbitral tribunal, shall, to the fullest extent permitted by law, be determined by final, binding and confidential arbitration in New York, New York, conducted by Judicial Arbitration and Mediation Services, Inc. ("JAMS"), or its successor" (*Id.*).

It is well settled that "[w]hen the agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence, of an intention to substitute, or to superadd his personal liability for, or to, that of the principal" (*Hall v Lauderdale*, 46 NY 70, 74 [1871]). Here, while the Mirabi Agreement is signed by Petitioner Banchik, Banchik's signature was not affixed in his individual capacity, but rather on behalf of Mirabi, Inc. in his capacity as "President" of Mirabi, Inc. (NYSCEF Doc. 27). Moreover, none of the Respondents are signatories to the Mirabi Agreement (*Id.*).

As Respondents have failed to proffer any agreement between Respondents and the Individual Petitioners containing an arbitration provision, the Court finds that Respondents have failed to meet their heavy burden of showing a clear and unequivocal manifestation of the Individual Petitioners' intent to arbitrate. Accordingly, Petitioners' petition is granted with respect to the Individual Petitioners.[2]

*[The remainder of this page is intentionally left blank]*

---

[2] For the foregoing reasons, Respondents argument that their claims against the Petitioners must be arbitrated because they are inextricably linked with claims subject to arbitration is similarly unsupported.

650780/2024   MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL                    Page 6 of 10
Motion No. 001

6 of 10

## B. Petitioners' Petition is Granted with Respect to the Non-Signatory Petitioners

As discussed *supra*, Respondents argue that the Non-Signatory Petitioners are bound to arbitrate through the theories of agency, veil piercing/alter ego, and estoppel (NYSCEF Doc. 18 at 11).

### i. Principles of Agency Law do Not Bind the Non-Signatory Petitioners to Arbitration

It is well established that "[a]n agent acting within the scope of its authority may bind a principal to arbitration" (*Jefferies & Co. v Infinity Equities I, LLC*, 66 AD3d 540, 542 [1st Dept 2009]).

Here, Respondents argue that the Non-Signatory Petitioners "are subject to the Arbitration through the acts of their agents and the controlling and oppressive shareholders, Mitchel [sic] Banchik and Michek Ashe [sic]... and their wholly owned management entities for of [sic] the assets held by the Respondents" (NYSCEF Doc. 18 at 12). Although Respondents argue that Petitioner MNM2 Management Inc. executes agreements as agents "on behalf of Respondents" this assertion is unsupported by any documentary evidence or citation to the record (NYSCEF Doc. 18 at 12).

As such, the Court finds that Respondents have failed to proffer the requisite clear and unequivocal manifestation of intent to arbitrate, sufficient to deprive Petitioners of their right to resort to the Courts (*Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [1st Dept 2002].

[*The remainder of this page is intentionally left blank*]

650780/2024  MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 7 of 10

7 of 10

      ii.      The Alter-Ego/Veil-Piercing Exception does Not Bind the Non-Signatory Petitioners to Arbitration

The Court of Appeals has held that:

> courts have created an 'alter-ego' exception, compelling the 'alter egos' of a signatory to arbitrate...[T]his exception applies...in determining whether a non-signatory to an arbitration agreement should be bound by it...Those seeking to pierce a corporate veil or course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences...Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance (*TNS Holdings Inc. v MKI Sec. Corp., 91 NY2d 335, 340 [1998]*).

As the alter-ego exception enables a party to compel the alter-egos of a signatory to arbitrate, it goes without saying that the agreement of the allegedly controlling signatory to arbitrate must be established in order to impute that agreement onto any of their alleged alter-egos. Here, as discussed above, Respondents have failed to meet their heavy burden of showing a clear and unequivocal manifestation of the Individual Petitioners intent to arbitrate and have failed to proffer documentary evidence showing an arbitration agreement between Respondents and the Individual Petitioners. Without a showing that the Individual Petitioners were signatories to any arbitration agreement with Respondents, it cannot be established that the Non-Signatory Petitioners are bound as alter-egos of the Individual Petitioners.

      iii.      Principles of Estoppel do Not Bind Petitioners to Arbitration

It is well established that a "nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's obligation to arbitrate" (*HRH Constr. LLC v Metropolitan Transp. Auth.*, 33 AD3d 568, 569 [1st Dept 2006]). However, "[w]here the benefits are merely 'indirect,' a nonsignatory cannot be compelled to arbitrate a claim. A benefit is indirect where the nonsignatory

650780/2024   MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 8 of 10

exploits the contractual relation of the parties, but not the agreement itself" (*Matter of Belzberg v Verus Invs. Holdings Inc.*, 21 NY3d 626, 630 [2013]). In distinguishing between direct and indirect benefits "[t]he guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause" (*Id.* at 633).

In order to bind the individual Petitioners to arbitration on estoppel principles, Respondents must demonstrate that the Individual Petitioners derive direct benefits from an agreement that contains an arbitration clause (*Id.*). Here, Respondents argue that the Individual Petitioners are receiving "a direct benefit from the governing agreements containing the arbitration clause" (NYSCEF Doc. 18 at 15). Specifically, in their Memorandum of Law in Opposition to Petitioners Motion, Respondents contend that "[r]evenue generated by the Property is paid to the Partnership's partners, including the LLC, as distributions. That money is the LLC's *sole* source of income. The [Individual Petitioners] as a member of the LLC, receive[] a portion of that revenue in the form of distributions" (*Id.*). It is unclear from Respondents' Memorandum of Law what "Property" and what "LLC" Respondent's counsel is referring to. Further, while Respondents contend that the Individual Petitioners receive a direct benefit from governing agreements containing arbitration clauses, Respondents fail to cite to or to annex any documentary evidence of governing agreements that confer such benefits upon the Individual Petitioners and also contain an arbitration clause.

The Court finds that Respondents have failed to provide the requisite evidence of the Individual Petitioners' "unequivocal intent to arbitrate" or Petitioners' direct benefit from an agreement containing an arbitration provision, sufficient to deprive Petitioners of their right to resort to the courts. In light of the foregoing, Petitioners' application for a permanent stay of the Arbitration as between Petitioners and Respondents is granted.

650780/2024   MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 9 of 10

[* 9]

Accordingly, it is hereby,

ORDERED that Petitioners MNM2 Management Inc., 1982 N. Clybourn Partners LLC, 442 Amsterdam Real Estate Corp., 300 East 76th Street Partners LLC, 109 MacDougal Street Partners LLC, 430 Amsterdam Partners, LLC, 2048 West Armitage Partners LLC, 1939 West Chicago Ave Partners LLC, Mitchell Banchik, and Michael Asch's Petition for an Order granting Petitioners a permanent stay of the Judicial Arbitration and Mediation Service Arbitration bearing Case No. 5425001778 as between Petitioners and Respondents, is granted; and it is further

ORDERED that counsel for Petitioners shall serve a copy of this Decision and Order upon Respondents and the arbitral tribunal within 30 days from the date of issuance; and it is further

ORDERED that the Clerk of the Court is Directed to enter judgment accordingly.

This constitutes the Decision and Order of the Court.

| 3/11/2024 | | | _May V Rosado_ JSC | |
|---|---|---|---|---|
| DATE | | | HON. MARY V. ROSADO, J.S.C. | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

650780/2024   MNM2 MANAGEMENT INC. ET AL vs. KAY, JENNIFER ET AL
Motion No. 001

Page 10 of 10

10 of 10